UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: SEP 2 8 2018

Germain Ismael,

        Plaintiff,

—v—

City of New York, et al.,

        Defendants.

17-cv-1825 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, District Judge:

Plaintiff Germain Ismael, proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983 against the City of New York and four employees of the New York City Department of Correction. Before the Court is the Defendants' unopposed motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Dkt. No. 38.

For the following reasons, the Court GRANTS Defendants' motion.

## I. Background

The Court first provides the factual and procedural background leading to this motion for judgment on the pleadings.

### A. Factual Background

The following facts are taken from the First Amended Complaint ("FAC") and assumed to be true for purposes of evaluating this motion for judgment on the pleadings. *See Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).

The facts giving rise to Plaintiff Germain Ismael's amended complaint arose out of Mr. Ismael's detention in the custody of the New York City Department of Correction on Rikers Island. FAC at 5. According to Plaintiff, on February 21, 2017, he and a fellow inmate were

1

returning to their housing area after completion of their R.I.S.E. program. *Id.* Plaintiff alleges that the correctional officer assigned to escort them to their dorm, Officer Rodriguez,[1] permitted the two inmates to return to their housing area unaccompanied. *Id.* While they were walking back, Correction Officer Davis "accosted" them and demanded to know where their escort was. *Id.* Plaintiff responded: "Don't ask us. Go find your coworker." *Id.* He alleges this comment upset Officer Davis, who "stormed to the dorm area" and asked the correctional officer on duty for their IDs. She also allegedly told Mr. Ismael, "I can take a joke. Let's see if you can." *Id.*

Plaintiff alleges that later in the day or night he was served with an infraction charging him of, as the amended complaint puts it, "saying things I say."[2] *Id.* Plaintiff alleges that these were false accusations and that an investigation into the incident never took place. *Id.* at 6. Nonetheless, two days later, on February 23, 2017, Plaintiff alleges he was called before "T.R.B.," where a hearing officer, Captain Perry, "discredited" his witness and his own testimony and found him guilty. *Id.* Accordingly, five days of good time credits were revoked. *Id.*

Plaintiff was initially scheduled for release on February 24, 2017. *Id.* To facilitate this release, he alleges that he was woken up at 1 a.m. and given all of his property to be released— only to be escorted back to his dorm to serve extra days because of the hearing outcome. *Id.* Plaintiff was subsequently released. *Id.* at 3.

On account of the extra time spent in jail and the attendant risks to his life, Plaintiff seeks damages from the City of New York and Defendants Rodriguez (#17320), Davis (#8250), Perry

---

[1] Although Plaintiff spells this Defendant's name "Rodrigues," the Court uses the Defendant's apparently correct spelling.

[2] In the hearing report appended to the initial complaint, Plaintiff's statement is described differently. *See* Dkt. No. 2 at 9–10. The Court need not determine whether this document is also incorporated by reference into the amended complaint or which statement to credit, as the nature of the statement has no effect on the disposition of Plaintiff's claim.

(#680), and Remy (#572).  The Court construes Plaintiff's claim as a claim that his procedural

due process rights were violated through the correctional facility's adjudication process.

### B.      Procedural Background

Plaintiff initially filed a complaint in this action on March 13, 2017.  Dkt. No. 2.  Plaintiff

then filed an amended complaint on June 19, 2017.  Dkt. No. 7.  Both of Plaintiff's complaints

initially named the New York City Department of Correction ("DOC") as a Defendant.  On June

22, 2017, Chief Judge McMahon, who previously presided over this case, construed Plaintiff's

claims as asserted against the City of New York and directed the Clerk of Court to amend the

case caption to replace the DOC with the City.  *See* Dkt. No. 9 at 2.

Defendants answered the amended complaint on September 11, 2017 and filed a motion

for judgment on the pleadings on February 13, 2018.  *See* Dkt. Nos. 15; 38.  Plaintiff did not

respond to this motion, and the Court accordingly deems it unopposed and fully submitted.  Dkt.

No. 43; *see also* Dkt. No. 46.

## II.      Legal Standard

Judgment under Rule 12(c) is appropriate if the moving party establishes "that no

material issue of fact remains to be resolved and that [it] is entitled to judgment as a matter of

law."  *Juster Assocs. v. Rutland*, 901 F.2d 266, 269 (2d Cir. 1990).  "In deciding a Rule 12(c)

motion, [courts] apply the same standard as that applicable to a motion under Rule 12(b)(6),

accepting the allegations contained in the complaint as true and drawing all reasonable

inferences in favor of the nonmoving party."  *Desiano v. Warner-Lambert & Co.*, 467 F.3d 85,

89 (2d Cir. 2006).  Further, particularly in a civil rights suit, the Court must "construe a pleading

filed by a pro se plaintiff to raise the strongest clam it suggests."  *Alvarez v. Doe*, No. 11-CV-

8832 (AJN), 2012 WL 4834186, at *1 (citing *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir.

2010) and *Weixel v. Bd. of Educ.*, 287 F.3d 138, 146 (2d Cir. 2002)). Applying the foregoing principles, to survive a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A plaintiff's failure to respond to a motion for judgment on the pleadings does not dictate dismissal of a complaint. Rather, "if 'the pleadings are themselves sufficient to withstand dismissal,' a *pro se* complaint will not be dismissed simply because the complainant failed to respond to a Rule 12(c) motion." *Nauss v. Barnhart*, 155 F. App'x 539, 540 (2d Cir. 2005) (summary order) (quoting *Maggett v. Dalsheim*, 709 F.2d 800, 802 (2d Cir. 1983)).

## III.  Discussion

Defendants contend that they should be awarded judgment on the pleadings on the asserted bases that (1) Plaintiff's claims are for "emotional injuries" and are therefore barred by the Prison Litigation Reform Act ("PLRA"); (2) Plaintiff failed to adequately allege a due process violation; (3) Plaintiff failed to state a claim against the individual Defendants; and (4) Plaintiff's municipal liability claim fails as a matter of law. Dkt. No. 41. Because the Court agrees with Defendants that Plaintiff's claims against the individual Defendants should be dismissed for failure to allege personal involvement and on qualified immunity grounds, and that the remaining claims against the City should be dismissed for failure to state a claim for municipal liability, it need not address Defendants' remaining contentions.

As a preliminary matter, it is not clear from Mr. Ismael's amended complaint whether he was detained pretrial and then released or, as the facts seem to suggest, convicted and incarcerated at Rikers Island. The Court does not find this fact dispositive for evaluating Plaintiff's claims and does not rest on either interpretation of the facts in its conclusions.

## A. Plaintiff's Claim Against Officer Rodriguez Is Dismissed for Failure to Allege Personal Involvement.

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986) (quoting *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)). "Personal involvement" includes both "direct participation in the alleged violation" and "gross negligence in the supervision of subordinates who committed the wrongful acts." *Patterson v. County of Oneida*, 375 F.3d 206, 229 (2d Cir. 2004).

Defendants argue that Plaintiff has failed to state a claim against Defendant Rodriguez because Plaintiff has not made any allegations that Defendant Rodriguez was involved in any deprivations of Plaintiff's constitutional rights. *See* Dkt. No. 41 at 1. The Court agrees. According to Plaintiff's amended complaint, Officer Rodriguez's only role in the alleged constitutional violations was to escort Plaintiff and his fellow inmate part of the way back to the housing area before permitting them to complete their return on their own. *See* FAC at 5.

Although Defendant Rodriguez's conduct may have been a but-for cause of Plaintiff's encounter with Officer Davis, because it is Officer Davis's alleged intervening conduct and the alleged procedural violations committed by other officers in investigating and making a determination on Plaintiff's disciplinary charge that form the basis of Plaintiff's amended complaint, the Court finds that Defendant Rodriguez's conduct was too remote from the alleged violations to support a finding of personal involvement. Further, while it remains theoretically possible that Defendant Rodriguez was personally involved insofar as he played some role in the facility's investigation of Plaintiff's alleged misconduct (or failure to conduct the same), Plaintiff has not offered any factual allegations that would support the Court's drawing such an inference.

Accordingly, Plaintiff's claims are DISMISSED as against Defendant Rodriguez.

**B.**     **Plaintiff's Claims Against Defendants Davis, Remy, and Perry Are Dismissed on Qualified Immunity Grounds.**

"The doctrine of qualified immunity protects government officials from civil liability for conduct that 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Castillo v. Rodas*, No. 09-CV-9919 (AJN), 2014 WL 1257274, at *5 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). If the district court determines that the right in question was not clearly established, "then the defendant is immune from suit, and whether his conduct in fact violated the plaintiff's rights is irrelevant." *Id.*

In this case, the individual Defendants argue that they are entitled to qualified immunity because Plaintiff has not alleged the violation of any clearly established statutory or constitutional rights. The Court agrees: even if the Plaintiff has sufficiently alleged the violation of a statutory or constitutional right, it is not sufficiently "clearly established" to warrant individual liability in this case.

Plaintiff attributes several wrongs to the individual Defendants: falsely accusing him of making a harassing comment to a correctional officer, failing to adequately investigate his alleged wrongdoing, and "discrediting" his and his witness's testimony at the underlying proceeding. FAC at 6.

### 1.     False Accusation

Plaintiff has no "clearly established right" to be free of a false accusation. The Second Circuit has held that a "prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986); *see also Boddie v. Schneider*, 105 F.3d 857, 862 (2d Cir. 1997) ("[A] prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report."). "The key inquiry in assessing an

allegation that an inmate has been found guilty of false disciplinary charges is whether or not the prison has provided the inmate with the minimum procedural due process protections guaranteed by the Fourteenth Amendment." *Franco v. Kelly*, 854 F.2d 584, 587 (2d Cir. 1988). Due process requires that inmates "be granted a hearing on whatever charges [have] been made against them," *Freeman*, 808 F.2d at 951, as well as "advance written notice of the charges at least 24 hours before the hearing; (2) the opportunity to appear at the hearing, to call witnesses, and to present rebuttal evidence; and (3) a written statement by the factfinders as to the evidence relied on for the decision, and the reasons for the prison committee's action." *Id.* at 953 (citing *Wolff v. McDonnell*, 418 U.S. 539, 564–66 (1974)).

As a further matter, some courts, including the First Circuit, have distinguished cases involving convicted prisoners who received hearings in front of disciplinary boards, like *Freeman*, from those involving pretrial detainees who did not. The First Circuit explained in *Surprenant v. Rivas* that "unprincipled manipulation of legitimate prison regulations . . . can constitute arbitrary punishment by a correctional officer, even if the response by other (unwitting) prison officials is legitimate and non-punitive." 424 F.3d 5, 14 (1st Cir. 2005) (citing *Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004)). Accordingly, pretrial detainees enjoy a right not to face immediate segregation based on false accusations, and correctional officers are not entitled to qualified immunity for false accusations that they know would result in such punishment. *See id.*

These caveats to the general principle articulated in *Freeman* are not sufficient to avoid the application of qualified immunity in this case. Even if the First Circuit's distinction from the *Freeman* rule is persuasive, here, Plaintiff was granted a hearing to evaluate the allegedly false accusation before he faced any formal consequences for his alleged misconduct. *See* FAC at 6.

Moreover, no court in the Second Circuit has adopted the *Surprenant* principle, preventing the right from being so clearly established that every reasonable Rikers officer "would [have understood] that what he [or she] was doing violates that right." *Reichle v. Howard*, 556 U.S. 658, 664 (2012) (quotation omitted) (some brackets added).

As a final matter, one court in this Circuit has maintained that "[t]he introduction of false evidence in itself violates the due process clause." *Morrison v. Lefevre*, 592 F. Supp. 1052, 1073 (S.D.N.Y. 1984); *see also Orwat v. Maloney*, 360 F. Supp. 2d 146, 165–66 (D. Mass. 2005) (holding that a correction officer's intentionally false charges could constitute the tort of intentional infliction of emotional distress). Although a distinction could be drawn between leveling a false charge and providing false evidence at the subsequent hearing, *Freeman* draws this conclusion into sufficient doubt that it prevents the Court from finding a clearly established right for qualified immunity purposes. Plaintiff's claims against Officer Rodriguez based on the allegedly false accusation are therefore DISMISSED.

## 2. Failure to Investigate

As explained above, prisoners are entitled to due process protections in prison disciplinary proceedings initiated against them. But these protections consist only of advanced written notice, an opportunity to call witnesses and present documentary evidence, and a fair and impartial hearing officer, and a written statement of the hearing officer's decision. *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004). There is no clearly established law suggesting due process further requires that prison officials conduct an investigation of the underlying claim. To the contrary, district courts have repeatedly held that failure to independently investigate the source of a charge does not rise to a due process violation. *JCG v. Ercole*, No. 11-CV-6844 (CM)(JLC), 2014 WL 1630815, at * (S.D.N.Y. Apr. 24, 2014) ("[I]nmates are not

constitutionally entitled to an investigation of any kind by government officials."), *adopted by* 2014 WL 2769120 (S.D.N.Y. June 18, 2014); *Robinson v. Brown*, No. 9:11-CV-0758 (TJM/DEP), 2012 WL 6799725, at *5 (N.D.N.Y. Nov. 1, 2012); *cf Bolden v. Alston*, 810 F.2d 353, 358 (2d Cir. 1987) (approving hearing officer's conduct when officer "conducted no investigation prior to" the disciplinary proceeding). Accordingly, Plaintiff's claims against Defendants Remy and Perry based on failure to investigate are DISMISSED.

### 3.     Infirmities with the Disciplinary Proceeding

As a final matter, Plaintiff alleges that the disciplinary proceeding itself violated procedural due process because it discredited his and his witness's testimony. Merely discrediting testimony cannot rise to the level of a due process violation provided that the disciplinary proceeding itself was neutral and fair. *See Pilgrim v. Dixon*, 10-CV-795, 2011 WL 4024794, at *4 (W.D.N.Y. Sept. 9, 2011); *Johnson v. Goord*, 487 F. Supp. 2d 377, 382–85 (S.D.N.Y. 2007). To the extent Plaintiff complains only of discrediting testimony, he has not pled the existence of a clearly established right and Defendants are entitled to qualified immunity. And to the extent Plaintiff's claims could be construed generously to allege that the disciplinary proceeding was not neutral or fair, Plaintiff has failed to allege any facts from which the Court could infer bias. As pure conclusory assertions, the facts Plaintiff has offered are insufficient to state a claim for relief. Accordingly, the remaining claims against the individual Defendants are DISMISSED as failing to plead a clearly established right or state a plausible claim.

### C.     Plaintiff's Claims Against the City Are Dismissed for Failure to Allege Municipal Liability.

"[A] municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the

municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2012) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 6658, 694–95 (1978)). But allegations of "isolated acts . . . by non-policymaking municipal employees are generally not sufficient to demonstrate" the existence of such a custom, policy, or usage—unless plaintiffs adequately allege that the underlying acts occurred "pursuant to municipal policy, or were sufficiently widespread to support a finding that they constituted a custom, policy, or usage of which supervisory authorities must have been aware, or if a municipal custom, policy, or usage would be inferred by evidence of deliberate indifference of supervisory officials to such abuses." *Id.* at 81.

Even construing his amended complaint generously, Plaintiff pleads no facts from which the Court could infer that his alleged deprivation of constitutional rights occurred pursuant to a city custom or policy. He has pled, at most, an isolated instance of a possible procedural due process violation committed by several low-level corrections employees. He has not pled any facts suggesting a pattern of similar cases or otherwise suggesting that supervisory authorities must have been aware of any underlying custom or practice. The City is accordingly entitled to judgment on the pleadings for all claims against it. Such claims are hereby DISMISSED.

## IV.    Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in full. This resolves Docket Number 38. The Clerk of Court is respectfully directed to close the case and enter judgment. Chambers will mail a copy of this order to the *pro se* Plaintiff and note its mailing on the public docket.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. See *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

Dated: September ___, 2018
New York, New York

ALISON J. NATHAN
United States District Judge